## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

**JOSEPH HUSSELL and A.H.,**

      **Petitioners/Plaintiffs,**

**v.**                                        **Case No. 2:19-cv-00101**

**JACKSON COUNTY PROSECUTING ATTORNEY,**
**STATE OF WEST VIRGINIA BY STATE ATTORNEY GENERAL,**
**CHILD PROTECTIVE SERVICES, WEST VIRGINIA GOVERNOR,**
**JACKSON COUNTY CIRCUIT COURT JUDGE LORA DYER, and**
**BUTCH AND BETSY HILL,**

      **Respondents/Defendants**

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

### BACKGROUND AND PROCEDURAL HISTORY

On February 11, 2019, Joseph Hussell ("Hussell") filed an Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1) and a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 2), purportedly on behalf of himself, and a minor child, who shall hereinafter be referred to by her initials, A.H.  Subsequent to the filing of the initial petition document, Hussell filed three amended petitions (ECF Nos. 4, 5, and 7).  This matter is now proceeding on the "Fourth Amended Petition for Habeas Corpus Relief and Redress for Being Tortured" (ECF No. 7).

A review of the convoluted petition documents demonstrates that Hussell is seeking both habeas corpus relief and relief for alleged civil rights violations, which must be addressed, if at all, through a complaint brought under 42 U.S.C. § 1983. Accordingly, the undersigned construes the present petition document as a hybrid petition for a writ of habeas corpus under 28 U.S.C. § 2241 and a complaint under 42 U.S.C. § 1983 (hereinafter "Petition/Complaint").

The Petition/Complaint alleges that A.H., Hussell's minor child, was removed from his custody in the course of abuse and neglect proceedings. Hussell further claims that, during the execution of a search warrant at his home in Mason County, West Virginia, on November 14, 2017, and after being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and requesting to remain silent pending the assistance of counsel, he suffered physical abuse and uses of force (which he describes as "torture") at the hands of West Virginia State Trooper Robert Boggs ("Boggs"). Specifically, Hussell claims:

> Officer Boggs told Mr. Hussell that he didn't get to have a lawyer and that if he wasn't going to cooperate that there were other ways in which he could be made to comply including things he could do to [A.H.] [Hussell] again asserted that he would like to retain his right to an attorney. Officer Boggs [told] Mr. Hussell that if he didn't comply that he was going to take him to the bathroom, hold him upside down in the bathtub[,] cover his face with a rag[,] and pour water over his face (waterboarding). Mr. Hussell refused to answer any more question[s] and at this point Officer Boggs grabbed Joseph Hussell[,] drew his firearm[,] placed it in Mr. Hussell['s] mouth[,] and told him he was going to admit to having child porn or he would blow his brains out. Officer Boggs then began interrogating Mr. Hussell. Because of fear of being waterboarded or having his brains blown out[,] Mr. Hussell told the officers whatever he thought they wanted to hear.

(ECF No. 7 at 3).[1]  Hussell further claims that this use of force against him resulted in his coerced admission to possessing child pornography, which was subsequently used to justify the removal of A.H. from his custody and his adjudication as an abusive parent. (*Id*. at 4-6).  Although he ultimately voluntarily relinquished his parental rights on June 21, 2018, Hussell claims that he did so "under fraud and duress."  (*Id*. at 6).

Hussell further contends that his court-appointed counsel in the abuse and neglect proceedings would not permit him to testify or contest the fact that Boggs has allegedly "abused and tortured him and used his testimony in proceeding against him" (which he refers to as "Fruit of the Poisonous Tree").[2]  (*Id*. at 5).  Hussell further alleges various violations of state statutory procedures and time periods with respect to removal of the child and proper adjudication of the abuse and neglect claim by the defendants, including the failure of Judge Lora Dyer, the presiding Circuit Court Judge, to timely enter an order on the adjudication, and the failure to advise him of his right to appeal his adjudication as an abusing parent.  (*Id*. at 49-56).

Finally, Hussell claims that, in February of 2019, he suffered retaliation at the hands of "Jackson County CPS," who allegedly sought to have restraining/protection orders entered against him, after he unsuccessfully attempted to file a habeas corpus petition concerning the abuse and neglect proceedings in the Circuit Court of Jackson

---

[1] Hussell further claims that, on November 17, 2017, Boggs returned to his home with the search warrant and property receipt and "took Mr. Hussell into the bathroom and waterboarded him repeatedly."  (ECF No. 7 at 4).

[2] Although the Petition/Complaint alleges that Hussell's court-appointed counsel, Calvin Honaker, "refused to allow him to testify about the torture at hearings (even though Mr. Hussell insisted) stating that he couldn't because criminal proceedings were pending against him[,]" (ECF No. 7 at 55), the Petition/Complaint does not confirm whether any criminal charges concerning child pornography were ever filed against him.  Other than his arrest for violating a restraining/protection order as discussed below, the undersigned has been unable to locate any criminal case filed in the Circuit Courts of Mason or Jackson County, or this federal court, in which Hussell was a defendant.

County.[3]  (*Id.* at 57-58).  On February 11, 2019[4], Hussell was arrested for violating one such restraining/protection order and, according to the Petition/Complaint, was incarcerated on those charges at the South Central Regional Jail from February 11, 2019 to February 27, 2019.  (*Id.* at 2).  The restraining/protection order was subsequently terminated.  (*Id.* at 8).

The Petition/Complaint further alleges that, on April 19, 2019, Hussell contacted the West Virginia Governor's Office and the West Virginia Attorney General's Office seeking an investigation of the alleged "torture" by Boggs, but no action was taken by either office.  (*Id.* at 8).[5]  The Petition/Complaint also states that Hussell filed "an appeal with the WV Supreme Court" on April 19, 2019; however, it does not specify what order or judgment Hussell was seeking to appeal, or the status of any such appeal.[6]  (*Id.*)

The Petition/Complaint appears to allege violations of Hussell's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, various international treaties outlawing torture, and several federal and state criminal statutes.  (ECF No. 7, *passim*).  These claims will be discussed *infra* as necessary.  Hussell seeks a reversal of the state court judgments in his abuse and neglect and habeas corpus proceedings, the restoration of his parental rights, return of custody of A.H., and monetary damages.  (*Id.* at 58-60).

---

[3]  Hussell complains about the proceedings being held in the Circuit Court of Jackson County instead of Mason County, where he resided at the time.  However, both Mason and Jackson Counties are part of the Fifth Judicial Circuit, and the matter was assigned to Judge Dyer, who sits in Jackson County.

[4]  Hussell filed his initial petition in this matter on the same date.  (ECF No. 3).

[5]  These allegations appear to be the only basis for Hussell's claims against Governor Jim Justice and Attorney General Patrick Morrisey and their respective offices.

[6]  The undersigned's staff contacted the West Virginia Supreme Court Clerk's Office and determined that Hussell filed a notice of appeal on April 19, 2019, which was dismissed as untimely on April 22, 2019.  Thus, it appears that there are no pending proceedings in the Supreme Court.

## **STANDARD OF REVIEW**

Where, as here, a plaintiff is proceeding *in forma pauperis*, this court has a duty to "screen initial filings . . . to independently assess the merits of *in forma pauperis* complaints" and "exclude suits that have no arguable basis in law or fact." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) (citing *Nasim v. Warden*, 64 F.3d 951, 953–54 (4th Cir. 1995)); *see* 28 U.S.C. § 1915(e).  The court must "dismiss a complaint filed *in forma pauperis* 'at any time if [it] determines that . . . the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.'" *Eriline Co.*, 440 F.3d at 656 (quoting 28 U.S.C. § 1915(e)).  That section also provides for dismissal where the complaint seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

A frivolous case has been defined as one which is based on an indisputably meritless legal theory.  *Denton v. Hernandez*, 504 U.S. 25 (1992).  A frivolous claim lacks "an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

When reviewing an *in forma pauperis* complaint for failure to state a claim, this Court applies the same standards that it applies to review a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (citing *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003)).  The court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Id.* (internal quotation marks omitted); *see also Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

Likewise, if the court determines at any time that it lacks subject matter jurisdiction over a claim or action, it must dismiss the same. *See* Fed. R. Civ. P. 12(h)(3). As addressed below, this court lacks jurisdiction over Hussell's claims for habeas corpus relief. Thus, the undersigned will first address Hussell's requests for habeas corpus relief before turning to his other claims.

## ANALYSIS

### I.     Hussell's Petition for a Writ of Habeas Corpus

To the extent that Hussell is seeking habeas corpus relief under 28 U.S.C. § 2241, as asserted in his Petition, there appears to be no valid basis for such relief herein. Section 2241 of Title 28 of the United States Code provides a federal court with the power to grant a writ of habeas corpus to a prisoner housed within its jurisdiction who demonstrates that he or she is in custody in violation of the Constitution, or laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). Hussell is not presently in custody. Thus, there is no existing basis for habeas corpus relief to release him from custody.

Even though Hussell appears to have been in custody at some point after filing his initial petition, any claim for habeas corpus relief based on such custody is now moot due his release therefrom. The United States Constitution limits the jurisdiction of federal courts to actual cases or controversies that are present at all stages of review. U. S. Const., art. III, § 2; *Honig v. Doe*, 484 U.S. 305, 317 (1988); *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990). When a case or controversy no longer exists, the claim is said to be "moot." In the context of habeas corpus, a case is rendered moot when the inmate has been released from the custody being challenged, without collateral consequences, and the court can no longer remedy the inmate's grievance. *See*, *e.g.*, *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Alston v. Adams*, 178 F. App'x 295 (4th Cir. 2007);

*Alvarez v. Conley*, 145 F. App'x 428 (4th Cir. 2005); *Smithhart v. Gutierrez*, No. 3:06-cv-11, 2007 WL 2897942 (N.D. W. Va. 2007).

Moreover, the undersigned has been unable to determine whether Hussell was ever actually criminally prosecuted on any charges in state or federal court. Accordingly, there appears to be no basis for Hussell to seek habeas corpus relief to overturn a conviction. If, in fact, he was prosecuted, he has not demonstrated that he has exhausted the available state court remedies prior to seeking habeas corpus relief on his own behalf in this federal court.

Rather, if Hussell is seeking habeas corpus relief to return his daughter, A.H., to his custody, that request also fails because a writ of habeas corpus under either 28 U.S.C. §§ 2241 or 2254 is not available in child custody matters. *See Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502 (1982) (mother could not challenge a state court judgment terminating her parental rights through the federal habeas corpus statutes); *see also Carpenter v. W. Va. Dept. of Human Servs.*, No. 88-1148, 865 F.2d 1257, 1088 WL 138473 (4th Cir. 1988) (federal court lacked jurisdiction over habeas corpus petition challenging child custody matters). Consequently, the undersigned proposes that the presiding District Judge **FIND** that this court lacks jurisdiction to consider Hussell's claims under 28 U.S.C. § 2241, or any other vehicle for federal habeas corpus relief. Thus, the petition for habeas corpus relief must be dismissed.[7]

---

[7] As Hussell and A.H. are not entitled to habeas corpus relief, the undersigned will hereinafter refer to the Petition/Complaint document as a "Complaint."

## II.      Hussell's Civil Rights Complaint

Although there is no basis for habeas corpus relief herein, the Complaint also clearly seeks declaratory, injunctive, and monetary relief for alleged constitutional and civil rights violations arising out of the abuse and neglect proceedings and the force allegedly used against Hussell.  The undersigned will now address those claims.

### A.      *The Rooker-Feldman doctrine bars the majority of Hussell's claims.*

As noted above, Hussell alleges numerous violations of his rights by the defendants during his abuse and neglect proceedings and he seeks reversal of the state court decisions resulting in the termination of his parental rights and return of custody of A.H. to him. Specifically, the Petition/Complaint document requests the following relief:

- Grant Petitioner(s) a writ of habeas corpus directing the Respondents to immediately release [A.H.] from custody and return her to the physical and legal custody of Joseph Hussell;
- Rescind Petitioner's Voluntary Termination of Parental Rights;
- Overturn the Adjudication Order entered on May 10, 2018 in the Jackson County Circuit Court;
- Order the Jackson County Circuit Court to stop adoption proceedings of [A.H.] pending the litigation of this matter;
- Estop the Jackson County Circuit Court from limiting Mr. Hussell's access to case filed in which he or [A.H.] are a party;
- Award Mr. Hussell and [A.H.] restitution and restore them to their situation before the abuse was committed.

(ECF No. 7 at 58).  These requests for relief essentially amount to an improper appeal of the state court's decisions.

The Supreme Court made clear in *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), that "federal courts are divested of jurisdiction 'where entertaining the federal claim should be the equivalent of an appellate review of the state court order.'" *Friedman's Inc. v. Dunlap*, 290 F.3d 191, 196-98 (4th Cir. 2002) (quoting *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th

Cir. 1997) ); Plyler v. Moore, 129 F.3d 728, 733 (4th Cir. 1997) (*Rooker-Feldman* applies when the federal action "essentially amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court"). More recently, the Supreme Court reiterated that the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The undersigned proposes that the presiding District Judge **FIND** that Hussell is essentially challenging the decisions of the Jackson County Circuit Court in his abuse and neglect proceedings, and this court's review of those decisions amounts to an appeal therefrom, which is barred by the *Rooker-Feldman* doctrine.

### B.    *This federal court cannot grant mandamus relief against state officials.*

These same requests for relief also essentially seek mandamus relief directed to the Circuit Court to rescind its orders, return custody of A.H. to him, and estop the defendants from limiting his access to case files.  Title 28, United States Code, Section 1361, provides as follows:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel <u>an officer or employee of the United States or any agency thereof</u> to perform a duty owed to the plaintiff. [Emphasis added.]

> A writ of mandamus "will issue only where the duty to be performed is ministerial and the obligation to act peremptory and plainly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable." Central South Carolina Chapter, Soc. of Professional Journalists, Sigma Delta Chi v. United States District Court for the District of South Carolina, 551 F.2d 559, 562 (4th Cir. 1977).

To the extent that Hussell could even identify any clear and indisputable duty owed to him or A.H. by any of the defendants herein, a federal writ of mandamus will not lie to compel a state officer to perform a duty owed to a petitioner. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that there is no jurisdiction for this United States District Court to issue a writ of mandamus directed to any of the defendants herein.

### C.    *Hussell's civil rights claims.*

Hussell's Complaint suggests that the defendants violated his rights under a variety of federal, state, and international laws and he seeks monetary damages for those alleged violations.  Such claims are generally addressed under 42 U.S.C. § 1983, which provides, in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983.  While not in itself a source of substantive rights, § 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  To successfully establish a § 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by <u>a person</u> acting under color of state law."  *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) [Emphasis added].

As addressed further below, a number of Hussell's claims fail to state a plausible claim for relief under § 1983. Based upon an exhaustive review of the Complaint and the accompanying proposed summonses submitted by Hussell (ECF No. 10), the undersigned concludes that Hussell is seeking relief from the following defendants: (1) the West Virginia Department of Health and Human Resources, Bureau of Children and Families, Child Protective Services in Jackson County (a state agency); (2) Melvin ("Butch") and Betsy Hill; (3) West Virginia Governor's Office and Governor Jim Justice in his official capacity; (4) the Jackson County Prosecutor's Office and Katie Franklin, Prosecutor, in her official capacity; (5) Jackson County Circuit Court Judge Lora Dyer, in her official capacity; (6) the West Virginia Attorney General's Office and Attorney General Patrick Morrisey in his official capacity; (7) the West Virginia State Police; and (8) West Virginia State Trooper Robert Boggs. The undersigned will address the claims against each defendant in turn.

> 1. <u>Butch and Betsy Hill</u>

"Butch and Betsy Hill" are named in the style of the Complaint and in the summonses. Although not specifically identified in the body of the Complaint, a review of the documents that accompanied Hussell's third amended petition suggest that Melvin ("Butch") and Betsy Hill are A.H.'s maternal grandparents, who may have been granted custody of A.H. during the course of the abuse and neglect proceedings. Nonetheless, the Complaint contains no specific allegations against them that would give rise to an actionable claim against them under section 1983.

At bottom, Butch and Betsy Hill are not state actors who may be considered "persons" suable under section 1983. Consequently, the undersigned proposes that the

presiding District Judge **FIND** that the Complaint fails to state a plausible claim for relief against Butch and Betsy Hill and that they should be dismissed as defendants herein.

2.   State defendants

Hussell's Complaint and summonses also name as defendants the State of West Virginia, by its Attorney General Patrick Morrisey, in his official capacity; the West Virginia Governor's Office and Governor Jim Justice, in his official capacity; the West Virginia State Police ("WVSP"); and the West Virginia Department of Health and Human Resources, Bureau of Children and Families, Child Protective Services ("WVDHHR-CPS"), which is a state agency that operates in Jackson County.  However, in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that neither a State, including its agencies, nor its officials acting in their official capacities, are "persons" under § 1983.

Moreover, the State, its agencies, and its officials are immune from suit in federal court under the Eleventh Amendment to the United States Constitution, which provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const., Amend. XI.[8]  It is clear that, regardless of the relief sought, the Eleventh Amendment bars suits by private citizens against a state, or its officials, in federal court, unless the state has specifically waived its right to immunity.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-99, 101 (1984).

---

[8]  Although not expressly stated in the amendment, the Eleventh Amendment has been held to bar suits against a state, or its officials, by its own citizens as well.  *See Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974).

A state can only waive its sovereign immunity by unequivocal expressions or actions. *Id.* at 99; *see also Edelman v. Jordan*, 415 U.S. 651, 673 (1921). Similarly, Congress can abrogate a state's immunity only where it has unequivocally expressed its intent to do so, and only where it has validly exercised its power. *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996).

The Complaint herein has not raised any claims under a statute in which Congress has clearly and unequivocally abrogated the State's Eleventh Amendment immunity, and Hussell fails to assert a meritorious argument that the State of West Virginia has waived its sovereign immunity. Accordingly, these defendants are entitled to absolute immunity. To the extent that such claims are not otherwise barred by the *Rooker-Feldman* doctrine discussed above, such immunity applies to all of Hussell's claims against these state agencies and officials, including his due process claims concerning the substance and procedures of the abuse and neglect proceedings and his retaliation claims.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the Complaint herein fails to state any plausible claim for relief against the State of West Virginia, and its Governor and Attorney General in their official capacities, as well as the WVSP and WVDHHR-CPS, as agencies of the State of West Virginia, and, thus, the claims against these defendants must be dismissed.

3.    Judge Dyer

Hussell has also named Jackson County Circuit Court Judge Lora Dyer as a defendant herein. However, all potential claims against Judge Dyer herein arise out of her conduct during the course of Hussell's court proceedings. Judicial immunity is a firmly rooted principle of law that shields judicial officers from civil suit for actions taken in exercise of their judicial functions. *Stump v. Sparkman*, 435 U.S. 349, 98 S. Ct. 1099

(1978).  The primary policy that supports judicial immunity is also well-established.  As early as 1872, the Supreme Court recognized that it is:

> [A] general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.

*Bradley v. Fisher*, 13 Wall. 335, 347, 20 L. Ed. 646 (1872).

The scope of judicial immunity is interpreted broadly.  In *Bradley*, the Supreme Court held: "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."  *Bradley*, 13 Wall. at 351.

The only exceptions to absolute judicial immunity are for non-judicial acts, or where the act is done in complete absence of jurisdiction.  *Stump*, 435 U.S. at 360; *Bradley*, 13 Wall. at 351.  (*Id.*)  Even if the judge acted in error, he or she is still immune.  *See Stump*, 435 U.S. at 356.  "By the same token, the [Supreme] Court has stated that a judicial act 'does not become less judicial by virtue of an allegation of malice or corruption.'" *Forester v. White*, 484 U.S. 219, 227 (1988).  Thus, even to the extent that Hussell claims that Judge Dyer "could not act impartially," (ECF No. 7 at 7), he cannot overcome this immunity.

To the extent that his claims against Judge Dyer are not otherwise barred by the *Rooker-Feldman* doctrine discussed above, the challenged actions by Judge Dyer herein were judicial functions.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Judge Dyer is entitled to absolute immunity from suit and, therefore, Hussell's claims against her must be dismissed.

4.    Jackson County Prosecuting Attorney's Office defendants

Hussell's Complaint herein further appears to assert claims against the Jackson County Prosecuting Attorney's Office ("JCPAO") and possibly two of its employees. Although there are no specific allegations concerning her conduct in the Complaint, the summons prepared for the JCPAO is directed to Katie Franklin ("Franklin"), the duly-elected Prosecuting Attorney for Jackson County. Additionally, the body of the Complaint contains specific allegations concerning the conduct of Jim Griesacker ("Griesacker"), a Jackson County assistant prosecuting attorney who was involved in the prosecution of Hussell's abuse and neglect proceedings.

Specifically, Hussell claims that, on March 16, 2019 [sic; 2018], Griesacker filed a discovery disclosure with the court and provided the discovery directly to Judge Dyer, but failed to provide the discovery to Hussell's counsel until "less than 24 hours before the Adjudication hearing" in violation of Rule 10(c) of the Rules of Procedure for Child Abuse and Neglect Proceedings. (ECF No. 7 at 51-52). The Complaint further appears to allege that, on November 27, 2017, a preliminary hearing was held without the filing of an amended verified petition, and that the amended verified petition was not filed by Griesacker until February 16, 2018, 94 days after A.H. was removed from Hussell's custody. (*Id.* at 49). However, violations of state law, standing alone, will not support a claim under § 1983. Rather, a plaintiff must demonstrate that the failure to follow such procedures resulted in a violation of the plaintiff's federal constitutional or statutory rights.

Moreover, a prosecutor is a "quasi-judicial" officer who enjoys absolute immunity when performing prosecutorial, as opposed to investigative or administrative, functions. In determining whether a prosecutor is entitled to absolute immunity, the court must

16

apply a "functional approach," examining the nature of the function performed. *Van de Kamp v. Goldstein*, 555 U.S. 335, 341-343 (2009). It is well-established that prosecutors are absolutely immune "for their conduct in initiating a prosecution and in presenting the State's case, insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-431 (1976)).

Further, absolute immunity extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993) (quoting *Imbler*, 424 U.S. at 431). A prosecutor acts as an advocate or officer of the court when performing tasks such as: (1) initiating a judicial proceeding; (2) presenting evidence in support of a search warrant application; (3) conducting a criminal trial, bond hearing, grand jury proceeding, or pre-trial hearing; (4) engaging in "an out-of-court effort to control the presentation of [a] witness's testimony;" and (5) making a "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before the grand jury after a decision to seek an indictment has been made." *Broadnax v. Pugh*, No. 5:15-cv-0376, 2017 WL 5617768, at * 3 (S.D. W. Va. Oct. 24, 2017), *adopted*, 2017 WL 5585630 (S.D. W. Va. Nov. 20, 2017) (citing Buckley, 509 U.S. at 272, quoting *Imbler*, 424 U.S. at 431); *Van de Kamp*, 555 U.S. at 434; *Debabnah v. Keller-Burnside*, 208 F.3d 467, 471-72 (4th Cir. 2000). Thus, a prosecutor "enjoys absolute immunity if the act is done in service of an advocacy function." *Safar v. Tingle*, 859 F.3d 241, 249 (4th Cir. 2017).

Most significantly, a prosecutor is absolutely immune even if he or she "acted with an improper state of mind or improper motive." *Shmueli v. City of New York*, 424 F.3d 231, 237-38 (2d. Cir. 2005); *Smith v. McCarthy,* 349 F. App'x 851, 859 (4th Cir. 2009);

*Sample v. City of Woodbury*, 836 F.2d 913, 916 (8th Cir. 2016). Thus, a prosecutor "is entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information.'" *Imbler*, 424 U.S. at 431 n.34. "These principles are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy." *Shmueli*, 424 F.3d at 237. Accordingly, prosecutors are entitled to absolute immunity for withholding materially exculpatory evidence or knowingly presenting false or misleading evidence to the Court or a grand jury. *Burns*, 500 U.S. at 490-92; *see also Brown v. Daniel*, 230 F.3d 1351, 2000 WL 1455443, at *2 (4th Cir. Sept. 29, 2000) (Table).

Additionally, the Fourth Circuit has extended absolute prosecutorial immunity to "[a]n attorney for the state who represents [the Department of Social Services] in a proceeding involving the alleged abuse and neglect of a child . . . ." *Ruach El v. Chang*, No. 2:17-cv-1915-RMG-BM, 2018 WL 672421, *5 (D.S.C. Jan. 10, 2018) (quoting *Shirley v. Drake*, No. 98-1750, 1999 WL 202671, at *2 (4th Cir. 1999)). Thus, so long as the attorney for the DHHR herein was acting as an advocate in a prosecutorial role, he or she is entitled to absolute immunity. *See also Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 138 (4th Cir. 1989) (holding social workers are also absolutely immune from their decisions to file custody removal petitions).

Hussell appears to be attempting to hold the JCPAO and its employees liable for their role in prosecuting his abuse and neglect proceedings. To the extent that such claims are not barred by the *Rooker-Feldman* doctrine discussed previously herein, the undersigned proposes that the presiding District Judge **FIND** that the allegations in the Complaint concerning conduct of the prosecuting attorneys is limited to actions taken in

their advocative role in his abuse and neglect and related proceedings and such conduct is subject to absolute immunity.

Furthermore, to the extent that Hussell has named the JCPAO itself, or Franklin in her official capacity, a suit against a public official in his or her official capacity is nothing more than a suit against the entity for which he or she is an agent. *Burch v. Moore,* No. 5:05-cv-00831, 2007 WL 760527, at *8 (S.D. W. Va. Mar. 8, 2007). Thus, the undersigned construes such claims to be brought against Jackson County, which is a political subdivision (hereinafter "the County").

To establish liability against a political subdivision, such as the County, under § 1983, a plaintiff must prove that a policy, practice, or custom of the political subdivision caused a constitutional deprivation. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). The Fourth Circuit has held that a plaintiff is required to establish the following three elements to demonstrate *Monell* liability: (1) a policy maker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *See Belcher v. Oliver,* 898 F.2d 32, 36 (4th Cir. 1990); *see also Burch,* 2017 WL 760527, at *8. "The unconstitutional conduct must be directly attributable to the political subdivision through some sort of official action or imprimatur; [and,] isolated or single events of unconstitutional actions by employees will almost never trigger liability." *Burch,* 2017 WL 760527, at *8 (citing *Monell,* 436 U.S. at 694). Such allegations are entirely absent from the Complaint herein.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the Complaint fails to state a plausible claim sufficient to establish *Monell* liability against Jackson County. Thus, the claims against the JCPAO and Franklin as its Prosecuting Attorney, must be dismissed.

5.     State Trooper Robert Boggs

The remaining claims in the Complaint appear to address the conduct of defendant Boggs.  Although Hussell has not named Boggs in the current case style, it is apparent that the Complaint is alleging claims based upon Boggs' conduct and his name is included in the summons submitted for service on the WVSP.  To the extent that the Complaint is construed to be naming Boggs in his official capacity as a West Virginia State Trooper, he would not be a person suable under § 1983 and would otherwise be entitled to absolute immunity under the Eleventh Amendment.  Nonetheless, the undersigned liberally construes the Complaint to also be bringing claims against Boggs in his individual capacity, which the undersigned will address in turn.

### i.     *Federal constitutional claims*

As noted in the background section above, Hussell alleges that Boggs threatened him, placed a firearm in his mouth, and waterboarded him.  Hussell further alleges that Boggs' conduct resulted in his coerced confession to possession of child pornography, which was used against him in his abuse and neglect proceedings.  The Complaint alleges that this conduct violated Hussell's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  Boggs is a state actor and, thus, he is subject to suit in his individual capacity under § 1983.  Furthermore, in his individual capacity, he is not immune from liability under the Eleventh Amendment.  Thus, the undersigned will address the plausibility of each alleged constitutional claim.

Allegations concerning the use of force in the course of an arrest or detention are governed by the Fourth Amendment, as such may constitute an unreasonable search and seizure.  *County of Los Angeles, Calif. v. Mendez,* 127 S. Ct. 1539, 1546 (2017) (citing *Graham v. Connor*, 471 U.S. 1, 8 (1985)) (Fourth Amendment objective reasonableness

20

standard applies to uses of force during arrest, investigatory stop, or other "seizure."); *Saucier v. Katz*, 533 U.S. 194 (2001) ("Excessive force claims are evaluated for objective reasonableness based upon the information the officers had when conducted."). The undersigned believes that the Complaint contains enough facts to state a plausible Fourth Amendment claim for relief against Boggs in his individual capacity based on the allegations that Boggs placed a firearm in Hussell's mouth and waterboarded him. However, to the extent that the Complaint also purports to assert a Fourth Amendment claim based upon the alleged seizure of A.H. on November 14, 2017, Hussell lacks standing to bring such a claim. *See Parker v. Austin*, 105 F. Supp.3d 592 (W.D. Va. 2015) (citing *Alderman v. United States*, 394 U.S. 165 (1969)) (dismissing Fourth Amendment claims brought by the parents of children who were removed from their home based upon suspected abuse where only the children and not the parents were seized).

The undersigned further believes that the allegations in the Complaint involving the extraction of an alleged coerced statement from Hussell on November 14, 2017, and the subsequent use thereof, may be sufficient to establish a plausible claim under the Fourteenth Amendment's Due Process Clause against Boggs. Thus, the undersigned believes that further development of Hussell's Fourth and Fourteenth Amendment claims should be permitted.

However, the Complaint fails to state plausible claims under the Fifth, Sixth, and Eighth Amendments, as asserted by Hussell. First, with respect to Hussell's Fifth Amendment claim and his assertion that he was interrogated in violation of his *Miranda* rights, the Complaint does not allege that Hussell's statements were ever used against him in a criminal trial or any other criminal proceeding. The abuse and neglect proceeding at issue in this matter is not a criminal proceeding.

In *Chavez v. Martinez*, 538 U.S. 760, 772-73 (2003), a plurality of the Supreme Court found that, absent use at a criminal trial, a compelled custodial statement does not violate the Fifth Amendment's right against self-incrimination, and will not serve as a basis for liability under § 1983. Specifically, the Court held, "We fail to see how, based on the text of the Fifth Amendment, Martinez can allege a violation of this right where Martinez was never prosecuted for a crime, let alone compelled to be a witness against himself in a criminal case." *Id.* at 766. [9]

Although there is a split of authority among the federal circuit courts concerning the implications of *Chavez*, the Fourth Circuit has specifically held that a violation of the Fifth Amendment's Self-Incrimination Clause requires both the initiation of criminal proceedings and subsequent use of the statement tied to a criminal trial. *See United States v. Streets*, 526 F.3d 122, 129-30 (4th Cir. 2007); *Burrell v. Virginia*, 395 F.3d 508, 513-14 (4th Cir. 2005) (restricting Self-Incrimination Clause to a "trial right" and cautioning against further expansion of such right).

Federal courts have further found that the protections provided under *Miranda* are prophylactic procedural provisions, not independent constitutional rights, and, standing alone, do not give rise to a constitutional violation actionable under § 1983. *See, e.g, Chrisco v. Shafran*, 507 F. Supp. 1312 (D. Del. 1981) (finding no Fifth Amendment violation and no actionable claim under § 1983 when statement taken in violation of *Miranda* protections was used in an internal investigation where no criminal charges were filed); *Westbrook v. Koch*, No. 1:16cv480, 2017 WL 2589963, at *3 (E.D. Va. June 13, 2017) (outside of context of criminal proceedings, "coercive or uncounseled

---

[9] Justice Souter's concurring opinion recognized that any § 1983 claim arising out of these circumstances is best addressed under the Fourteenth Amendment Due Process Clause challenging outrageous police conduct. 538 U.S. at 779

questioning by law enforcement does not amount to a freestanding constitutional violation needed to support a § 1983 claim."); *Devlin v. Nalley*, No. 8:16-cv-1024, 2017 WL 492097, at * 3 (D.S.C. Feb. 7, 2017) ("§ 1983 action is an improper means for claiming a *Miranda* violation.").  Thus, the undersigned proposes that the presiding District Judge **FIND** that Hussell's claims that his rights under the Fifth Amendment and *Miranda* were violated fail to state a plausible claim upon which relief can be granted.

Hussell's claim grounded in the Sixth Amendment right to counsel similarly fails because that right also applies only in the context of a criminal prosecution and does not arise until such criminal proceedings have been initiated.  *Kirby v. Illinois*, 406 U.S. 682, 688 (1972); *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013).  As Hussell has not alleged that any criminal prosecution was initiated against him at the time of his alleged uncounseled statements, the undersigned proposes that the presiding District Judge **FIND** that he has not established a plausible claim under the Sixth Amendment.

Moreover, to the extent that Hussell also asserts that Boggs' conduct violated his rights under the Eighth Amendment's prohibition against cruel and unusual punishment, the Eighth Amendment protections only apply in the context of a sentenced prisoner. *Graham v. Connor*, 490 U.S. 386, 387 (1989) (The "less protective" Eighth Amendment standard applies only after criminal conviction and sentencing.)  Accordingly, it has no application to the facts presented in the instant Complaint.  Therefore, the undersigned proposes that the presiding District Judge **FIND** that the Complaint herein fails to state a plausible claim for relief under the Eighth Amendment.

### ii.   *International covenants*

While Hussell's allegations may state plausible claims for relief under the United States Constitution as discussed above, they do not give rise to any plausible claim under

23

the United Nations' "Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment" ("UNCAT"), the "International Covenant on Civil and Political Rights" ("ICCPR"), or any other international covenants cited in the Complaint. (ECF No. 7 at 12-43).[10]

The UNCAT "criminalizes torture outside the United States, but does not provide civil redress for torture within the United States." *Johnson v. Hodgson*, No. CV 12–10913–MLW, 2015 WL 5609960, at *6 (D. Mass. Sept. 22, 2015) (internal quotations and citations omitted). Moreover, courts have held that the UNCAT does not create a private cause of action and cannot be used as the basis for any civil liability. *Sepulveda v. UMass Corr. Health, Care*, 160 F. Supp. 3d 371, 388–89 (D. Mass. 2016); s*ee also Renkel v. United States*, 456 F.3d 640, 644 (6th Cir. 2006); *Horstkotte v. N.H. Dep't of Corr., Comm'r*, No. CIV. 08–CV–61–JL, 2008 WL 2401565, at *7 (D.N.H. June 10, 2008).

Likewise, the ICCPR does not give rise to a private right of action. The Supreme Court has made it clear that "[a]lthough the covenant does bind the United States as a matter of international law, the United States ratified the covenant on the express understanding that it was not self-executing, and so did not itself create obligations enforceable in the federal courts." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004).

Hussell's Complaint acknowledges that he is a United States citizen. He further alleges that he was subject to abuse by another United States citizen on United States soil. As a matter of law, Hussell has not sufficiently established the application of any of these

---

[10] Hussell also references provisions of the "Inter-American Convention to Prevent and Punish Torture," the "American Convention on Human Rights," and the "Universal Declaration of Human Rights." (ECF No. 7 at 15-17). These documents also fail to give rise to any cognizable claim under section 1983. *See Rivera v. Byars*, No. 8:12-cv-01443, 2013 WL 4695637, at *6 (D.S.C. Aug. 30, 2013) (Universal Declaration of Rights is not a treaty or international agreement, and "does not of its own force impose obligations as a matter of international law." Thus, it does not provide a basis for a claim under § 1983); *Burger v. Kemp*, 483 U.S. 776, 823 n.5 (1987) (dissent) (the United States has not ratified these international covenants).

provisions of international law under the facts alleged in the Complaint. Accordingly, to the extent that Hussell seeks monetary or other relief under these international provisions, the undersigned proposes that the presiding District Judge **FIND** that the Complaint fails to state any plausible claim upon which relief can be granted.

### iii.    _Criminal provisions_

Likewise, Hussell cannot state any plausible claims for relief against Boggs under the federal and state criminal provisions referenced in the Complaint. Hussell appears to be asserting that Boggs' removal of A.H. from Hussell's custody on November 14, 2017 constituted a "kidnapping of [A.H.] through the denial of constitutional rights of both Mr. Hussell and [A.H.]" (ECF No. 7 at 49). Hussell also cites to 18 U.S.C. § 242, which is a federal criminal statute governing "deprivation of rights under color of law." (_Id._) However, these are criminal offenses which do not give rise to any private right of action supporting civil liability, and criminal charges may only be pursued by state or federal prosecutors. _See United States v. Oguaju_, 76 F. App'x 579, 580 (6th Cir. 2003) (district court properly dismissed claims filed pursuant to 18 U.S.C. §§ 241 and 2412 because there is no private right of action under those criminal statutes); _Hester v. West Virginia_, No. 5:07-cv-00401, 2008 WL 4298471 (S.D. W.Va. Sept. 18, 2008) ("no private right of action can be inferred from 18 U.S.C. §§ 241, 242"); _Harnden v. Croswell-Lexington Cmty. Sch._, No. 15-CV-12738, 2-16 WL 2731188, at *2 (E.D. Mich. May 11, 2016) ("There is no private right of action for purported violations of Federal Kidnapping Act.") (collecting cases). Thus, the undersigned proposes that the presiding District Judge **FIND** that these allegations fail to support any plausible claim for relief on behalf of Hussell or A.H. in this civil rights proceeding.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** Hussell's Petition for a Writ of Habeas Corpus under Rule 12(h)(3) of the Federal Rules of Civil Procedure, for lack of jurisdiction. Additionally, pursuant to 28 U.S.C. §§ 1915(e)(2)(B), it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** all claims in the Complaint against (1) the WVDHHR-CPS; (2) Butch and Betsy Hill; (3) the West Virginia Governor's Office and Governor Jim Justice in his official capacity; (4) the Jackson County Prosecutor's Office, Katie Franklin, Prosecutor, in her official capacity, and Jim Griesacker; (5) Jackson County Circuit Court Judge Lora Dyer, in her official capacity; (6) the West Virginia Attorney General's Office and Attorney General Patrick Morrisey in his official capacity; and (7) the West Virginia State Police.

Furthermore, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** all claims in the Complaint against defendant Boggs, except for Hussell's claims under the Fourth and Fourteenth Amendments. By separate Order, the undersigned has granted Hussell's Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1) and ordered that a summons be issued and served by the United States Marshals Service on defendant Boggs.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with

the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the petitioner/plaintiff, Joseph Hussell.

February 14, 2020

Dwane L. Tinsley
United States Magistrate Judge

27